Filed 1/20/21; Certified for partial publication 2/16/21 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| HOOTAN DANESHMAND et al., | |
| Plaintiffs and Appellants, | G058394 |
| v. | (Super. Ct. No. 30-2016-00829167) |
| CITY OF SAN JUAN CAPISTRANO, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, William D. Claster, Judge.  Affirmed.

Cotchett, Pitre & McCarthy, Niall P. McCarthy, Eric J. Buescher, Mallory A. Barr; Law Offices of Marc Goldstein and Marc Goldstein for Plaintiffs and Appellants.

Best Best & Krieger, Jeffrey V. Dunn, Wendy Y. Wang, and Daniel L. Richards for Defendant and Respondent.

\*          \*          \*

Notice of a claim against a public entity must be provided within one year after accrual of the cause of action, or the claim will be barred. (Gov. Code, §§ 911.2, 945.4.)

In a prior opinion, a panel of this court determined that the tiered water rate system used by the City of San Juan Capistrano (the City) violated the California Constitution. The City offered to refund its water ratepayers (ratepayers) the difference between what they paid and what they should have paid for a 10-month period of time, in exchange for a release of other claims against the City related to the tiered water rate system.

Plaintiffs Hootan Daneshmand, Brian Montgomery, and John Bottjer (collectively Plaintiffs) were ratepayers in the City. Bottjer signed the release and received a refund; Daneshmand and Montgomery did not. Plaintiffs later filed a notice of claim against the City, on behalf of themselves and a putative class of ratepayers, to recover the difference between what they paid and what they should have paid during the entire time the tiered water rate system was in place. The City denied the notice of claim, which was filed more than one year after the last bill under the tiered water rate system was due, as untimely under Government Code section 911.2. This litigation followed.

The claims of Bottjer and the other ratepayers who obtained a refund from the City were barred by the release those ratepayers signed. Contrary to Plaintiffs' arguments on appeal, the release was valid and enforceable.

Plaintiffs' causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing were properly dismissed by the trial court. These causes of action depend on the existence of an implied contract or implied contract terms, to which a municipal entity cannot agree.

Finally, the claims of Daneshmand, Montgomery, and the other ratepayers who did not accept the City's refund offer were barred because the notice of claim was

2

filed more than one year after the claims accrued. Plaintiffs failed to show that waiver or any other legal or equitable doctrine affected the application of Government Code section 911.2 in this case.

Therefore, we affirm the judgment.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

The City approved a water rate adjustment, effective February 1, 2010; these water rates were in effect through June 30, 2014 (the tiered water rates). The tiered water rates provided for different classes of customers (i.e., residential, agriculture, construction), and for four tiers of water rates within each class. The Capistrano Taxpayers Association sued the City to challenge the tiered water rates as violative of Proposition 218, which requires water rates to reasonably relate to the cost of service. (Cal. Const., art. XIII D, § 6, subd. (b), par. (3); *Capistrano Taxpayers Assn., Inc. v. City of San Juan Capistrano* (2015) 235 Cal.App.4th 1493, 1497-1498, 1499, fn. 6 (*Capistrano*).) The trial court ruled that the City had failed to carry its burden of establishing that the tiered water rates were proportional to the costs of providing water services to its customers and therefore violated Proposition 218. This court affirmed the portion of the trial court's judgment concluding that the tiered water rates violated Proposition 218. (*Capistrano, supra,* 235 Cal.App.4th at pp. 1497-1498.) That litigation settled in May 2015.

On June 16, 2015, the City approved a water rate fee refund program under which any ratepayer that paid more than the tier 1 water rate within their ratepayer class between August 28, 2013 and June 30, 2014, would receive as a refund or utility credit the difference between the amount actually paid and the amount that would have been paid under tier 1 (the Refund Program).[1] More than 6,530 ratepayers, including plaintiff

---

[1] August 28, 2013 was the date the trial court's judgment issued in the underlying case. New water rates went into effect on July 1, 2014.

3

Bottjer, participated in the Refund Program, signed a release, and received a refund or a credit to their water account.

The release at issue in this case reads as follows:  "Release and Waiver of Further Refund Claims.  In exchange for a refund of water rates as set forth in this document, the person signing below ('Claimant'), on behalf of Claimant, any other account holder(s) of the above-referenced account, and their heirs, assigns and representatives fully, finally and forever discharges the City of San Juan Capistrano ('City'), and its officers, officials, employees and agents from any and all claims, demands, liabilities or causes of action, in law or in equity, of any nature whatsoever, known or unknown, which the Claimant now [has] or may have against the City arising out of the water rates charged by the City prior to July 1, 2014[] ('Disputed Rates[']). Claimant further covenants not to sue, or participate in any lawsuit regarding the Disputed Rates.  Any water rate refund provided by the City shall not constitute any admission by the City of wrongdoing or liability in connection [with] the Disputed Rates."

On September 30, 2015, counsel for Plaintiffs served the first Notice of Governmental Claim on the City.  Counsel for Plaintiffs served a second notice on December 4, 2015, on behalf of Daneshmand, Bottjer,[2] and Montgomery.  The claims were denied in November 2015 and January 2016, respectively, as untimely and not within the Refund Program.

On January 8, 2016, Daneshmand, Bottjer, and Montgomery, on behalf of themselves and a putative class of ratepayers, sued the City for breach of contract, breach of the implied covenant of good faith and fair dealing, for money had and received, and

---

[2]  Lauri McIntosh was originally named in the second notice of claim, and as a plaintiff in the complaint.  McIntosh and her husband Bottjer owned property in San Juan Capistrano; Bottjer rather than McIntosh was the named water account holder.  The parties stipulated to amend the complaint to replace McIntosh with Bottjer.

4

negligence.  The complaint proposed a class of "[a]ll water customers [of] San Juan Capistrano who were charged more than a Tier 1 water rate between February 2010 and July [2014] and paid the higher rate," with a proposed subclass of "[a]ll water customers of San Juan Capistrano who were charged more than a Tier 1 water rate between February 2010 and July [2014], paid the higher rate, and who received a partial refund and/or credit from San Juan Capistrano as a result of filling out and returning San Juan Capistrano Water Refund Claim Form on or before October 1, 2015."

In May 2017, Bottjer and the City filed cross-motions for summary adjudication on the validity and enforceability of the release signed by Bottjer when he applied for and received his refund under the Refund Program.  The trial court granted the City's motion and denied Bottjer's motion.

In August 2017, the City filed a motion for judgment on the pleadings.  The trial court granted the City's motion in part, and dismissed Plaintiffs' claims for breach of contract and breach of the covenant of good faith and fair dealing, with leave to amend; Plaintiffs did not amend their complaint.

The trial court certified a class consisting of "All water customers of the City of San Juan Capistrano, who were[] charged more than the base tier water rate between February 1, 2010 and June 30, 2014 and paid the higher rate.  [¶] Excluded from the Class are the following:  [¶] (1) water accounts charged to the City; and, [¶] (2) water customers who received payment by filling out and returning San Juan Capistrano Water Refund Claim Form ('Refund Claim Form')."  Daneshmand and Montgomery were appointed as class representatives.

The parties stipulated to a bench trial to determine whether Government Code section 911.2 and the statute of limitations barred Plaintiffs' claims based on stipulated facts, a stipulation of the facts and issues to be tried, and the arguments of counsel.  Following the bench trial, the court issued a statement of decision finding that Plaintiffs' remaining claims were untimely under, and therefore barred by, the

5

Government Claims Act (Gov. Code, § 810 et seq.).  Judgment was entered in favor of the City.

This appeal followed.

DISCUSSION

I.

*STANDARDS OF REVIEW*

On appeal, Plaintiffs challenge the order granting summary adjudication, the order granting the motion for judgment on the pleadings, and the judgment following the bench trial.

The orders granting summary adjudication (*Magic Carpet Ride LLC v. Rugger Investment Group, L.L.C.* (2019) 41 Cal.App.5th 357, 362-363) and granting judgment on the pleadings (*Yu v. Liberty Surplus Ins. Corp.* (2018) 30 Cal.App.5th 1024, 1030) are reviewed de novo.

Even when a trial is had on stipulated facts, we review the trial court's findings for substantial evidence.  "'"Even in cases where the evidence is undisputed or uncontradicted, if two or more different inferences can reasonably be drawn from the evidence this court is without power to substitute its own inferences or deductions for those of the trier of fact."'"  (*Schwan v. Permann* (2018) 28 Cal.App.5th 678, 693-694.)[3]

_____

[3]  Plaintiffs argue that the statute of limitations issues decided at the bench trial should be reviewed de novo.  (See *Morgan v. Davidson* (2018) 29 Cal.App.5th 540, 560 [trial court's determination of what claims are barred by the statute of limitations is reviewed de novo on appeal]; *Arcadia Development Co. v. City of Morgan Hill* (2008) 169 Cal.App.4th 253, 260-261 ["Where the pertinent facts are undisputed, it is a question of law whether a case is barred by the statute of limitations.  Accordingly, we apply the de novo standard of review"].)  This would be true to the extent the trial court was determining only whether a claim was barred by the statute of limitations, and not whether a fact-intensive exception to the statute was at issue.

6

## II.

*THE TRIAL COURT PROPERLY GRANTED THE CITY'S MOTION AND DENIED BOTTJER'S MOTION FOR SUMMARY ADJUDICATION.*

The cross-motions for summary adjudication addressed whether the ratepayers who signed the release as part of the Refund Program could nevertheless pursue claims for the amounts they paid above the tier 1 rates outside the period from August 28, 2013 to June 30, 2014. The City contended that the release was valid and barred the claims of Bottjer and the other ratepayers who signed it as part of the Refund Program. Plaintiffs contend on appeal that the release was not valid because the City fraudulently concealed material facts from the ratepayers who signed it. Plaintiffs also contend that the release signed by the ratepayers who participated in the Refund Program is unenforceable against them because it (1) was not supported by adequate consideration, (2) violates public policy by attempting to limit the City's liability for a violation of law, and (3) is unconscionable.

1. The City Established the Release Barred the Claims of the Ratepayers Who Signed It.

The trial court found that the City had met its burden of establishing that the "unambiguous language [of the release] acts as a bar to all pre-existing claims between [Bottjer] and the City for all disputes arising out of water rates charged by the City before 07/01/14." Plaintiffs do not challenge this finding on appeal.

2. Bottjer Failed to Establish Fraudulent Concealment of Material Facts.

Plaintiffs argue on appeal that the release is invalid because the City had a duty to disclose certain facts to the ratepayers regarding their claims and the release, but failed to do so. Specifically, Plaintiffs contend that the City had a duty to disclose the amount it overcharged each ratepayer, why the tiered water rates resulted in overcharges, the amount to be refunded, and the difference between the amount overcharged and the amount of the refund. "Where it is shown that deception has been practiced in obtaining

7

a release it may not be considered as a satisfaction of anything not consented to by the claimant." (*Moore v. Rogers* (1958) 157 Cal.App.2d 192, 196; see *Skrbina v. Fleming Companies* (1996) 45 Cal.App.4th 1353, 1366.)

"'The required elements for fraudulent concealment are (1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and would not have acted as he or she did if he or she had known of the concealed or suppressed fact; and (5) plaintiff sustained damage as a result of the concealment or suppression of the fact. [Citation.]'" (*Hambrick v. Healthcare Partners Medical Group, Inc.* (2015) 238 Cal.App.4th 124, 162.) The trial court found that Bottjer had failed to present evidence to establish elements (2), (4), or (5). On appeal, Plaintiffs only address whether elements (1) and (2) were established. Like the trial court, we conclude that Bottjer failed to offer undisputed material evidence establishing elements (4) and (5); therefore summary adjudication was properly granted against him and the putative class he sought to represent.

As to element (4), the trial court found that, assuming for purposes of analysis the City had a duty to disclose, Bottjer had failed to show "he was unaware of the fact that he was overcharged as far back as 2010 and was not being reimbursed for all overcharges or that he would not have signed the release had he known of these facts." As to element (5), the trial court found: "[A]lthough the stipulated facts establish that the [Bottjer] was subject to unconstitutional water rate charges prior to 08/23/13, he has not established that he would have been entitled to a refund of any overcharges prior to that date." In neither Bottjer's motion for summary adjudication nor his opposition to the City's motion did Bottjer address these elements of a claim of concealment.

The relevant documents, which were in Bottjer's possession before signing the release, support the legal conclusion that Bottjer failed to prove he was unaware of the allegedly concealed material facts. The Water Rate Refund Frequently Asked

8

Questions flyer included the following: "Why is my refund only from Aug 2013 to June 2014? [¶] The law provides for a one year statute of limitations. Although the challenged rates have not been charged by the city since June of 2014, the City felt that it was the right thing to do to refund rates that were charged from the date of the trial court decision in 2013 until the time when the City adopted new rates." The water refund claim form read in relevant part as follows: "Refund/Credits will be issued for water rate overbillings made between August 28, 2013, and July 1, 2014, which resulted in overpayments. [¶] An 'overpayment' was made if you were billed more than a Tier 1 water rate at any time during the time period above and paid that billing. Your refund will be calculated by the City based on usage records for your account." The language of the cover letter for the claim form is virtually identical.

Further, as the trial court noted, the allegation in the complaint that "[u]ntil receipt of the letter in July 2015, Plaintiffs were not aware and could not have known that [the City] did not intend to refund the full amount of its illegal overcharges" suggests that the notice letter advised Plaintiffs that the City would not be reimbursing them for all overcharges—a fact they now claim was concealed from them.

Plaintiffs offered no evidence in the trial court that any allegedly concealed material fact affected Bottjer's decision to sign the release, or that doing so caused him any damages.[4]

---

[4] Plaintiffs argue that Government Code section 911.2 did not bar the claims of the ratepayers who participated in the Refund Program because their claims had a later accrual date "based on the misleading nature of the City Notice and Claim Form that induced them to participate in the program." Because the claims were based on the notice and claim form, which was sent to ratepayers on or about July 2, 2015, Plaintiffs contend that those claims could not have accrued until July 2, 2015 and were not untimely as of September or November 2015. Because Plaintiffs failed to establish concealment by the City, the separate argument that the City's concealment leads to a later claims accrual date necessarily fails.

9

### 3. The Release Was Not Unconscionable.

To be found unconscionable, a contract must be shown to have both procedural and substantive elements of unconscionability: "(1) oppression or surprise due to unequal bargaining power, and (2) overly harsh or one-sided results." (*Donovan v. RRL Corp.* (2001) 26 Cal.4th 261, 291-292.) In this case, Plaintiffs did not prove either element.

Plaintiffs argue the release was procedurally unconscionable because it was an adhesion contract. An adhesion contract may be procedurally unconscionable when the weaker bargaining party—in this case, the ratepayers—have neither the power to negotiate the terms of the contract nor a realistic opportunity to look elsewhere for a needed service. (*Morris v. Redwood Empire Bancorp* (2005) 128 Cal.App.4th 1305, 1319-1320 (*Morris*) [noting that not all adhesion contracts are oppressive].) While it is true that the City drafted the release and provided no opportunity for the ratepayers to negotiate its terms, the failure to sign the release would not prevent the ratepayers from obtaining needed services. A rejection of the release simply meant that the ratepayer would need to file a timely claim with the City and then possibly sue the City to recover overcharged water fees. As Plaintiffs note, many ratepayers who submitted notices of claim rather than the official claim form with the release were given refunds, proving that the release form was not a contract of adhesion.

Further, the release was not "hidden in a prolix printed form or . . . otherwise beyond the reasonable expectation of the weaker party." (*Morris, supra*, 128 Cal.App.4th at p. 1321.) The claim form was a single page. The heading "Release and Waiver of Further Refund Claims" is underscored. The release language is in the identical size and font as the rest of the document, and is located immediately above the signature line. The release was not procedurally unconscionable.

Substantive unconscionability can be shown where the contract terms "are so one-sided as to 'shock the conscience,' or that impose harsh or oppressive terms."

(*Morris, supra*, 128 Cal.App.4th at p. 1322.)  The unreasonableness of a contact term does not equate with substantive unconscionability.  (*Id.* at pp. 1322-1323.)  Plaintiffs argue that the release "reallocate[d] risks in an objectively unreasonable or unexpected manner," quoting *Morris, supra*, 128 Cal.App.4th at page 1317.  We disagree.  No risk was allocated to the ratepayers who participated in the Refund Program; they received a specified amount of money for a refund covering a specified period of time in exchange for releasing any claims against the City.

No evidence was presented that (1) the City's use of tiered water rates in violation of Proposition 218 guaranteed ratepayers a refund at all or in any specific amount, (2) the tiered water rates caused any particular ratepayer to be overcharged, or (3) any of the ratepayers who signed the release as part of the Refund Program would have received more if they had not participated in the Refund Program.  The FAQ flyer provided with the claim form explained that the City was basing its proposal on the ground that the limitations period was only one year.  Therefore, the release itself reflected the compromise:  a ratepayer gets the specified refund in exchange for the release of all claims.  Nothing about the Refund Program or the release shocks the conscience.  The release was not substantively unconscionable.

4.  <u>Consideration Was Not Required and/or Was Provided.</u>

A written release under Civil Code section 1541 does not require consideration.  Plaintiffs argue that section 1541 does not apply in this case because "the City's release cannot be treated as a release to extinguish a prior <u>agreed upon obligation</u>.  Indeed, the release was part of an <u>offer</u>, not the termination of an existing agreement."  This argument is meritless.

First, the inadequacy of consideration alone is insufficient to set aside a written release.  (*Moore v. Rogers, supra*, 157 Cal.App.2d at p. 196.)

The trial court found that, in any event, consideration was provided because the ratepayers who participated in the Refund Program would receive a refund or credit

11

without the need to submit a claim pursuant to the Government Claims Act. "A written instrument is presumptive evidence of a consideration." (Civ. Code, § 1614.) And the amount of consideration necessary in any case is merely that of a "peppercorn." (*Third Story Music, Inc. v. Waits* (1995) 41 Cal.App.4th 798, 808, fn. 5.)

>    5.  The Release Did Not Violate Public Policy.

Plaintiffs contend that the release violated public policy, citing Civil Code section 1668 and *City of Santa Barbara v. Superior Court* (2007) 41 Cal.4th 747, 754. These authorities address contracts releasing a party from liability for future tortious acts; they do not address releases for past alleged bad acts. "[Civil Code section 1668] is meant to prohibit contracts releasing liability for *future* torts [citation], not to prohibit settlements of disputes relating to past conduct." (*Watkins v. Wachovia Corp.* (2009) 172 Cal.App.4th 1576, 1587, fn. 12.) Plaintiffs did not establish a violation of public policy by the City.

III.

*THE TRIAL COURT DID NOT ERR BY GRANTING THE MOTION FOR JUDGMENT ON THE PLEADINGS OF THE CLAIMS FOR BREACH OF CONTRACT AND BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING.*

Plaintiffs argue that the ratepayers' monthly water bill constitutes a contract by which the City makes an offer of future performance, and the ratepayer accepts the offer by using the water and paying for it. However, under this theory, there is no breach of contract; there is no allegation that the City at any time failed to provide water to any of the ratepayers. Only with the inclusion of an additional implied term that the rates being charged are consistent with Proposition 218 could Plaintiffs make a claim for breach. Yet there are no allegations in Plaintiffs' complaint supporting the inclusion of this implied term. Even if there were, as explained in the following paragraphs, such an implied term in a contract with the City would be unenforceable.

12

Alternatively, Plaintiffs argue that an implied contract was created by the parties' conduct. (Civ. Code, § 1621; *Del E. Webb Corp. v. Structural Materials Co.* (1981) 123 Cal.App.3d 593, 611.) Plaintiffs contend that when the City approves a rate increase it makes an offer to sell the ratepayers water at that price, with an implied promise that the rate is lawful.

It is well-established that a public entity may not be sued for breach of an implied contract. (*Green Valley Landowners Assn. v. City of Vallejo* (2015) 241 Cal.App.4th 425, 437-438; *Sheppard v. North Orange County Regional Occupational Program* (2010) 191 Cal.App.4th 289, 294.) Further, Government Code section 40602, which requires that a mayor shall sign all written contracts entered into by a city, impliedly prohibits contracts that are not in writing. (*Poway Royal Mobilehome Owners Assn. v. City of Poway* (2007) 149 Cal.App.4th 1460, 1474-1475.)

Plaintiffs further contend that the City's failure to abide by the California Constitution with regard to water rates breached the implied covenant of good faith and fair dealing. A claim for breach of the implied covenant necessarily requires the existence of a contractual relationship between the parties. (*Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 683-684, 690.) As explained *ante*, assuming the monthly water bills are properly construed as a written contract between the City and the ratepayers, the allegations of the complaint do not suggest such a contract includes an implied term that the City's water rate system was constitutional. Therefore, a claim for breach of the implied covenant based on such an implied term in the monthly water bills necessarily fails. Because there could not be an implied contract, there can be no breach of a covenant in such an implied contract.

The trial court did not err in granting the City's motion for judgment on the pleadings.

13

IV.

*THE TRIAL COURT'S FINDING THAT PLAINTIFFS' CLAIMS WERE UNTIMELY UNDER GOVERNMENT CODE SECTION 911.2 IS SUPPORTED BY SUBSTANTIAL EVIDENCE.*

The bench trial centered on the timeliness of Plaintiffs' claims under Government Code section 911.2, which provides that a claim against a public entity must be presented "not later than one year after the accrual of the cause of action." A lawsuit against a public entity is barred if a timely notice was not presented. (*Id.*, § 945.4; *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 738.).

The City contended that the time to submit a notice of claim under the Governmental Claims Act expired August 19, 2015, one year after the last water bill based on the tiered water rates was due, making the notices from Plaintiffs in September and December 2015 untimely. Plaintiffs contend that the time to file their claims had not expired as of September 2015, when the first notice of claim was served on the City. Plaintiffs further contend that even if their claims would have been untimely as of September 2015, the claims period was equitably tolled. Finally, Plaintiffs contend that the City waived the right to assert the Government Code section 911.2 claims period and reopened the claims period.

1. The Period for Submitting a Notice of Claim to the City Expired August 19, 2015.

"A period of limitations ordinarily commences at the time when the obligation or liability arises, regardless of the plaintiff's ignorance of the cause of action. [Citation.] Under the general rule, a claim would accrue when the overpayment was made." (*Utility Audit Co., Inc. v. City of Los Angeles* (2003) 112 Cal.App.4th 950, 962 [claim for refunds by property owners charged for sewer service they had not used].)

The last invoice reflecting the tiered water rates was sent by the City to ratepayers on July 23, 2014, and was due no later than August 19, 2014. Therefore, the one-year period to submit a notice of claim to the City expired August 19, 2015.

14

2.  <u>Plaintiffs Forfeited the Issue of Equitable Tolling.</u>

Plaintiffs contend on appeal that the one-year claims presentment period was equitably tolled during the pendency of the underlying litigation. Equitable tolling is a judicially created doctrine that applies after a claim has accrued to "'suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness.'" (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 99.)

The issue of equitable tolling was never raised in the trial court. "'As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal; appealing parties must adhere to the theory (or theories) on which their cases were tried.'" (*Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 997.) Plaintiffs did not raise equitable tolling as an issue for trial in their trial brief, or during the oral argument before the issues were submitted to the court for decision. The trial court's statement of decision reads, in relevant part, as follows: "Although stated somewhat differently by the parties, the issues here boil down to (1) the date(s) on which the class members' claims accrued, and (2) if those claims were not timely presented to the City, whether the City waived the claims presentation requirement of the Claims Act." The statement of decision did not address equitable tolling. While Plaintiffs filed objections to the proposed statement of decision, and indeed to the very sentence quoted, they did not object based on the omission of the issue of equitable tolling.

We conclude that Plaintiffs forfeited the issue of equitable tolling. We reject Plaintiffs' request that this appellate court exercise its discretion to decide the issue as a question of law for the first time on appeal. (*Dowling v. Farmers Ins. Exchange* (2012) 208 Cal.App.4th 685, 696 [appellate court has discretion to consider issue of law for the first time on appeal].)

3.  <u>The City Did Not Waive Government Code Section 911.2.</u>

Plaintiffs argue the City waived the August 19, 2015 date by which notices of claim were required to be filed against it because it permitted ratepayers to participate

15

in the Refund Program until October 1, 2015, and because it approved individual claims that were presented without participating in the Refund Program.

"Waiver [of the limitations period under the Government Claims Act] requires an existing right, benefit, or advantage, actual or constructive knowledge of the right's existence, and either an actual intention to relinquish it or conduct so inconsistent with any intent to enforce the right as to induce a reasonable belief that it has been relinquished. [Citations.] The waiver of a legal right cannot be established without a clear showing of intent to give up such right. [Citation.] 'The burden is on the party claiming the waiver to prove it by clear and convincing evidence that ""does not leave the matter doubtful or uncertain."""'" (*Utility Audit, supra,* 112 Cal.App.4th at p. 959.)

The trial court found that Plaintiffs had not established an actual intention by the City to waive a known right. This finding is supported by evidence that the City initiated the Refund Program to "do the right thing" for ratepayers, and that it never stated an intention to waive the limitations period. When the City accepted individual claims filed after August 19, 2015, it noted that it was doing so despite the fact they were not timely, but would have been timely if filed as part of the Refund Program.

The trial court further found that Plaintiffs had not established conduct by the City so inconsistent with an intent to enforce the claims period that it would cause Plaintiffs to reasonably believe it would not do so. Plaintiffs contend that the City's payments to 12 ratepayers who submitted claims after August 19, 2015, but before the Refund Program cut-off on October 1, 2015, was conduct sufficient to waive the Government Claims Act. With respect to these claims, the City Attorney advised the City Council: "[T]hese claims would normally not be considered timely under the Government Claims Act and would be denied in their entirety. However, these claims were submitted by October 1, 2015, and partially fall within the August 28, 2013 - July 1, 2014, time period set by the City Council's policy for water rate refunds. Therefore, with respect to these claims, staff is recommending approval to the extent that they seek a

16

refund within the Council policy period and denial of the remainder." Notably, the City only approved these claims to the extent they sought a refund for overcharges during the period of August 28, 2013 through June 30, 2014—the same period specified in the Refund Program. The City denied the claims to the extent they sought refunds outside that period.

As the trial court noted in its statement of decision, the Refund Program was intended to provide ratepayers who wanted a refund or credit to submit an individual claim form and sign a release. The City provided these ratepayers until October 1, 2015 within which to submit their claims. The City *did not* by its words or actions extend the Government Code section 911.2 claims period. When individual claims were received by the City *after* the October 1, 2015 cutoff, the City rejected those claims as untimely. The City's response to the class claims presented by Plaintiffs was always different than its response to the individual claims presented before October 1, 2015, but not as part of the Refund Program.

Substantial evidence supports the trial court's finding that the City did not waive the protections of the Government Claims Act, in particular Government Code section 911.2.

In a related argument, Plaintiffs contend that the Refund Program reopened the one-year period to make a claim under Government Code section 911.2. Plaintiffs suggest that the notice letter and claim form sent by the City to ratepayers to advise them of the Refund Program "on its face extended the time to make a timely claim to the government for overcharges from the unconstitutional water rate scheme." But the Refund Program only provided ratepayers with a means of recovering overcharges for a specific period of time by releasing other claims they might have against the City. The trial court correctly determined that the claims period was not reopened because the Refund Program was separate from the standard process by which government claims are served and resolved.

17

DISPOSITION

The judgment is affirmed.  Respondent to recover costs on appeal.


FYBEL, J.

WE CONCUR:


ARONSON, ACTING P. J.


GOETHALS, J.

Filed 2/16/21

**CERTIFIED FOR PARTIAL PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| HOOTAN DANESHMAND et al., | |
| Plaintiffs and Appellants, | G058394 |
| v. | (Super. Ct. No. 30-2016-00829167) |
| CITY OF SAN JUAN CAPISTRANO, | ORDER GRANTING PARTIAL PUBLICATION |
| Defendant and Respondent. | |

Respondent the City of San Juan Capistrano and its appellate counsel, Best Best & Krieger, have requested that our opinion, filed on January 20, 2021, be partially certified for publication. It appears that portions of our opinion meet the standards set forth in California Rules of Court, rule 8.1105(c)(2), (4) and (6). The request is GRANTED for partial publication pursuant to California Rules of Court, rule 8.1110.

This opinion is ordered published in the Official Reports with the exception of part III.


FYBEL, J.

WE CONCUR:


ARONSON, ACTING P. J.


GOETHALS, J.